We'll move to our second case this morning, Crothersville Lighthouse Tabernacle Church v. Church Mutual Insurance Company.  May it please the court, Josh Tatum for Lighthouse Tabernacle Church. Lighthouse Tabernacle asks the court in this exceptional case to excuse forfeiture, correct the plain error that allowed Church Mutual to benefit from its own delay in preventing its policyholder from rebuilding as soon as reasonably possible after a fire destroyed its place of worship. Taking into consideration Church Mutual's own delays, it did not demonstrate that the church failed to rebuild as soon as reasonably possible beyond a genuine dispute of material fact. The district court granted judgment on those grounds only because counsel below did not sufficiently point the court to the facts that create that dispute. But this court can find disputed facts within Church Mutual's own designated evidence. Whether the church took a reasonable amount of time to rebuild in light of all of these circumstances presents a question for a fact finder, not appropriate for summary judgment. Mr. Tatum, do you rely at this point on any evidence that is not already part of the record? No, no, your honor. Okay. Do we know whether Attorney Smith had any malpractice insurance in effect? It's not in the record, but yes, he did. I'm glad to hear that. Yes, we are too, your honor. It's not sufficient to cover the damages in this case. And of course, as this court is well aware, Mr. Smith has more than one client who is unhappy with his performance. What's the status of the reconstruction effort at this point? The church, again, not in the record, your honor, but it has begun to rebuild and is on its way to completing that. It had to take a more modest approach than it would have otherwise and do this in phases and take out loans to do so. But that here is not really the question here. The question is, is it a reasonable thing for a policyholder to do to wait for the disputes about the cost of replacement to be resolved and for the insurance company to close its investigation before starting the demolition? Obviously, I understand your position on that. But the larger question here is certainly about when courts can and should rescue a client from its own lawyer's mistakes. What limits do you see to your theory here? Because frankly, what concerns me is that it looks as if everybody can get a mulligan, at least if they are willing to blame their lawyer, or at least if they don't get a mulligan, they at least have a chance to argue for one and put the other side to another round of litigation. I would start with this court's broad discretion and the exceptional circumstances here. Mr. Smith below did raise the delays. He just didn't point to the evidence in the record that was, again, part of Church Mutual's designated evidence. And this court is the one that removed him. The Church is not the one that decided to fire him from this matter. There's a special relationship between the insurer and the policyholder. Well, we removed him from our bar, so he can't very well continue to represent clients once we've removed him from our bar. And the Church is grateful for that. My point is that that's an exceptional circumstance in this case. It's not as if the client was unhappy with his performance. But the exceptional circumstances requirement for plain error review in a civil case, which is extraordinarily rare, very rarely granted, that requirement focuses on the nature of the error below. And the error below is a garden variety mistake by a lawyer not to advance the best argument and back it up with law and facts. He instead advanced other arguments that were no good. There's nothing exceptional about that. That happens every day. Your Honor, I think that the error below is broader than just his error. That the evidence and the issues that were presented included this discussion about delay. The whole grounds of the summary judgment order is that the Church was to blame for those delays. The evidence that was presented on that issue shows that there is at least a dispute of fact. So what was the error then? The court's error was that it, I mean... You can't very much, very well ascribe any error to the court. And that's what plain error review in the criminal context focuses on. There was some misfire in the proceedings below by the court, typically a miscalculation of the sentencing guidelines range or something of that nature that is very clear and very obvious and very clearly favors the defendant in the case who's usually advancing these arguments and should have been noticed by everyone, including the district judge. And that warrants a favorable exercise of this court's discretion because substantial rights are affected and the fairness and integrity of the proceeding are affected. And none of that is in play here. I don't even see a clear articulation of error, much less an argument that the error was plain and obvious, much less that it satisfies our exceptional circumstances requirement for plain error review in a civil case. The evidence was presented. The core issue in summary judgment was who is to blame for the delay. And the court had everything in front of it. It could have if it had just been pointed to a page number. So the court should have gone and researched the issue and found the Pertell and McCulloch cases that you're relying on here and should have decided the novel question of law that they present under this prevention doctrine that you're advancing and should have done all that legal heavy lifting because counsel did not. No, Your Honor. I mean, that's what you're asking us to say. That's what plain error review necessarily entails. This appeal would have been presented de novo, but for this lack of a sentence or a paragraph in Mr. Smith's briefing. The core question is not about the prevention doctrine points toward the core question, and that is, is it reasonable for a policyholder in the church's position to wait for. And that's not a slam dunk on this record. So we can hardly call that a plain error. We're not suggesting that summary judgment should have been granted for the church. It's just that there is a reasonableness is a fact question that a jury should decide. And that there is evidence in the record that supports that. The parties go back and forth, and the insurance company was responsible for almost all of the delay. What's the limiting principle on your argument here, to get back to Judge Hamilton's question? If we grant relief here, then it opens the door to plain error review in civil cases, in any case where the lawyer made a mistake in judgment about which arguments to advance. So I began at the court's broad discretion. That's not a limiting principle. I'm asking for a limiting principle. But every time the court considers this that I've seen, it emphasizes that this is a case-by-case analysis. So we know it when we see it. That is a part of this. I think that there are unique or distinct characteristics to the case. For example, that we were almost there. Below, again, we're a sentence or a citation or a paragraph short of actually making sure that the district court was aware that reasonableness is disputable. Reasonableness of the delay. This isn't a case of payment or nonpayment. Your client was paid a substantial sum. That's right. The record is shifting with regard to the difference between actual costs and placement costs. What is that now? I understand your confusion, because it is not clear. I think that right now it's between $675,000 and $780,000 or $90,000. I think that if remanded, we would probably be at the limit of the policy by now due to the further delays. We were close to that on our replacement costs already. The insurance company had paid $1.5 million, and we were at around $2.2 million. The limit is a little north of $2.3 million. Mr. Tatum, I've got a question that may sound uninformed and naive. Do we have a ripe breach of the policy at this point under anybody's version of this? I'll tell you what prompts that. I don't believe your client ever submitted a sworn complete proof of loss, did they? Yes. There are two proofs of loss. Complete? Yes. Well, one is complete, and that's not disputed. When was that? That was, I think, in the fall of 2019. It's in our briefing. And that was part of the basis for the $1.5 million paid on actual cost value. And then the second proof of loss happened in November of 2019. And that's the one that the insurance company disputed and did not accept.  The insurance company said that it wanted an actual cost value on that proof of loss as well as a replacement cost value. That was the main reason it rejected it. But there's not a dispute here. Okay. You're satisfied there's a ripe breach of the policy from your client's point of view in failing to pay your claim for replacement cost? Yes. At the very least, in the delays in closing the claim. Has the claim, in fact, been closed? No. In April. That's my question. Right. Okay. Okay. You guys had to file suit. I understand that because of the way too coy response to the request about a tolling agreement. And I'll want to ask your opposing counsel about that. But if this hasn't been closed, what are we doing here at this point? Well, I suppose the breach is all of these delays. I mean, we took two years and we still hadn't gotten to a point. We were at the point of appraisal, but we didn't have sufficient time to. But there was clearly dragging of feet and multiple delays, treatment to my client's detriment, and I think a breach of the insurer's duty of good faith. And so at the very least, those are the delay. And then there's an anticipatory breach here by the time that the lawsuit is filed for the same reasons. If there are no further questions, I'll reserve my time. Thank you. Thank you. Ms. Rowe. Thank you, Your Honor. May it please the Court. The first thing I'd like to go back to is Judge Hamilton's question about the tolling response from Church Mutual, my client. I don't believe that was a coy response, not that that is relevant here. All that has happened is we were asked, at least all this in the record, and I will tell you I do appellate work, so I'm also new to this case as my . . . That's not really a very helpful response for us. Right, but . . . We expect you to know the case. I know the record. And in the record, what is in there is it says they ask us about a tolling arrangement. And they're talking about the suit clause, the two-year suit clause, and not the 180 days. And they ask about the tolling arrangement. And all we say in response is could you give us essentially a draft of what you're wanting us to agree to. Again, at this point, we're dealing with . . . Church Mutual is dealing with not a novice person. What is the purpose of this tolling agreement? Well, they want to know the scope of it. What are they looking for? We didn't know the claims they were raising. The case was not closed out. We had not said anything in terms of . . . And at that point, we had paid the last check. They still had the 180 days. The way this works is once a check is made for the actual cash value, we give that advisement. It has to be done in a reasonable time. We give the advisement that says you have 180 days or let us know if you have a problem with that. And they filed suit within three months of that and alleged that we had breached. When the six-months rolled around, that 180 days period rolled around, which would have been September of 2020, they hadn't done anything. That would have been past the two years for suit? Right, but this is a common practice. They will file suit, and then they will . . . Typically, what they would do is ask for an appraisal because the whole issue in this was not coverage. It was valuation, and that would have been binding. It's almost like an arbitration proceeding. It would have been a binding process. And typically, what insurers do, if they run up on that suit clause, they will file suit and in the complaint will say, we request appraisal on policy, and it stayed until they do the appraisal, which should have eliminated everything because it would have been binding on us. There was no coverage problem. We would have been bound by whatever that appraisal, the three appraisal process said. The umpire appraisal would have weighed in if there was a conflict between the two appraisals, and we would have been bound by that. And that's not what happened. They asked for an appraisal. We gave a name. They keep talking about all these delays from Church Mutual. I don't know what delays they're talking about. I've done an entire timeline of the record, of what's in the record. And to me, this is an illustration of good faith. In fact, I thought that's why they had abandoned the bad faith claim. As I understand it, what they're talking about is your client taking months and months and months, a year and a half after the fire, there was no definitive position taken by your client. You were reserving the rights to, you didn't want them to start demolition to be able to start reconstruction, right? No. What happened was, and the reason the timeline is the way it is, is we hired a building consultant, an outside person. They did the estimate. Lighthouse Tabernacle didn't like that estimate. Their guy comes back with a very huge estimate. We say, okay, once they had stuff in there, we changed it. We revised that as our estimate, our first estimate, twice based on new things that had come to light. And one of their estimates that they had given was about, because the whole issue revolved around those glulam beams. And one of the things that they had said is, here's what we believe it's going to cost for these glulam beams to be put back up the way they were supposed to be. But it is completely subject to us hiring an architect and an engineer. So once they continued to complain, we hired an engineer. That's what they told us they were going to do. And so we just went ahead and hired a third-party engineer. And then when they started asking the questions, like this all happened in November of 2019, they say, hey, they know about the engineer. And they're like, you know, we talked about it. Where's the engineer's report? We're like, we're looking into it. The guy had been on vacation, and it was Thanksgiving. So we go past that. Then they say we want to demolish. And our response was, we have to have the engineer report. It wasn't that we have to have all investigation ever complete. There's no way the engineer can do a job, can do its report, if the building is demolished. So we simply said, we have to have the engineer report. Once we received the engineer report, we gave it to them promptly. And that was it. And then after that is when we paid the final payment, like three or four months later. And it had that same 180-day clause that says you need to do this within 180 days or notify us if you can. We never said, oh, we're still investigating. I mean, all we were waiting on is that engineer report. They have blown that totally out of proportion. If you read the emails, and they're in the record at Appendix 919 and 864, is the email that they, their public adjuster, wrote to the pastor. And if there's any dispute at all, it came in that email. But that was not from us. That was from the public adjuster. And, again, that's Appendix at 864. But if you look at those emails, that's all we were talking about is the engineer report and us getting that before we were able to, you know, they would have to demolish at their own risk essentially is what we were telling them because we have to have the engineer's report. That's the whole reason we did this. And then they asked for an appraisal, which, again, would have resolved everything. We immediately gave them a name of our appraisal. That's how that process works. And then they give the name of theirs. Those two pick an umpire. And then those three determine the valuation of this property. And then that's how we would have been bound by that. Because, again, there was no coverage dispute here. We knew that this fire loss was caused by an accident. We never said it was intentionally caused or anything like that. There was no coverage dispute. The only dispute was on the value of the property itself. And the district judge was supposed to figure all of this out by herself. And notice the error by counsel and do the research in order to avoid getting reversed. Absolutely. This discussion about the merits presupposes that there's grounds to apply the plain error doctrine, rarely applied in civil cases. I 100% agree. And I also believe that the plain error standard doesn't even come into play because the word, and I know that the case law has said, forfeiture and waiver are used interchangeably sometimes. But in this case, I believe it was used properly. Because even under their argument, he did not just not file a— when I say he, I'm talking about Attorney Smith. He didn't just not file a response. He did file a response. He filed a nine-page response. He filed designations of evidence. All the stuff they're relying on, he filed. Or they're saying we filed. And he chose certain arguments to raise. Those arguments, admittedly, were not good arguments. But that happens all the time. And a new counsel will see a case differently and say, I mean, that happens when we come into cases on appeal sometimes. You look at it and say, man, I wish this argument had been raised or whatever. That's just what happens. It's not plain error. The court sometimes has that view too. Yes. And if it's waiver, the plain error standard does not come into play. And so I don't think we can just cavalierly say, oh, well, waiver and forfeiture are always different. This is definitely a forfeiture because even though they raised five arguments, they missed the one argument that was a good argument. Every litigant can say that when they lose. All they have to do is get new counsel and say, hey, I lost. There had to be a reason. It couldn't have just been because my claim wasn't good. It had to have been because the arguments weren't raised properly. And so we believe the plain error standard doesn't even come into play. If it does come into play, there are no exceptional circumstances here. And I can talk about that. But I believe that has already been discussed. I don't want to waste this court's time. And it's certainly briefed. But this is just a simple case of at this point, they lost at the district court level. And they believe it was their attorney's fault. But at that time, their attorney was in good standing in all the courts it was before. I'm not saying it was a great attorney.  I'm not impugning the attorney either. I don't know this attorney. I'm simply saying the attorney was in good standing. And it's the attorney they choose that they had chosen. They could have chosen any attorney they wanted. That's who they chose. And when you do that, that's your representative. And they're limited to that. We also believe there was no prejudice here. Because we don't believe at the time that the only argument they keep in the briefs they keep talking about how Church Mutual denied the claim. They never denied the claim. A lot of times you'll see an insurance company will say in a written letter, in a form letter, we deny this claim for X, Y, and Z. That was never done here. What they're using is in the summary judgment motion, which was almost a year after that last 180-day deadline had passed, had expired. And in that summary judgment motion, we were saying, look, they filed suit against us for breach of contract. They have not identified the breach. So we were kind of blindly shooting out and saying, we didn't breach because of the actual cash value. We paid everything in the actual cash value that we were supposed to pay from your first proof of loss. Your second proof of loss was rejected. And you never gave us another one. And so we didn't do that. And then we had another reason. We didn't breach because of not paying the replacement cost value. Because in order to get replacement cost value, you absolutely have to repair within a reasonable time. And what we were using was not the reasonable time from the date of loss. What we were using is a reasonable time from that March 24, 2020, last check when that was paid. And at that point, again, I'm talking, by the time the summary judgment was filed, it was a year and a half after that 180-day time period would have expired. And so at that point, we said, look, there's no breach there. And so even if they had raised a different argument, there was too much time had passed. They'd never told us and they'd never identified. They'd never told us they had made repairs or making repairs or starting repairs, nor did they tell us, look, we have a problem. We don't have sufficient funds or whatever. And we're going to have, you know, we need something else. So if there's no other questions, I thank you, Your Honors. First, Judge Hamilton, I wanted to answer your question. The first proof of loss was in November 2018. That's on Appendix 860. I want to correct something that has been confused in my mind. It has been confused in the communications, beginning with the communications between the parties and in the briefing even. And that is that the standard here is not 180 days. It is a reasonable time to rebuild. The 180-day reference, it seems to me, comes from the requirement to notify the intent to pursue replacement costs within 180 days of the loss. But that 180-day language is not within the repair or replace as soon as reasonably possible. That is the phrase that's in the policy. And you can see that on Appendix 439. Why wasn't this argument waived instead of merely forfeited? Your whole avenue to appellate review at all depends on there not being a waiver. You know, Church Mutual has not pointed to any evidence that it was a strategic decision. There doesn't need to be any evidence of that. This is a judgment call on the part of the court, and the distinction between waiver and forfeiture in civil cases is not as well-defined as it is in criminal cases. There were no rights that were at issue here. This was just a judgment call by counsel on which arguments to advance. And the selection of some and exclusion of others is ordinarily a strategic decision by counsel. What is there that indicates that that general rule does not apply here? The briefing below includes a sentence or two talking about Church Mutual's delay. It doesn't point to any evidence. That was what the district court. He didn't emphasize that argument and back it up in a robust way. He made other arguments. That's a judgment call by counsel. That's a strategic decision by counsel. And the risk of a bad decision falls on the client, not on the opponent. Your Honor, I would encourage you to read the summary judgment brief that he filed and to decide for yourself whether you think that that was a strategic decision. Just because it was a bad decision doesn't mean that judgment wasn't exercised. He made a decision about what arguments to advance, and that's a judgment by counsel. It's just because it's a bad decision. If every bad decision by an attorney in a civil summary judgment filing is a forfeiture instead of a waiver and grounds for plain error review, there is no limit to plain error review. I think that a waiver does need to be knowing and intentional, and this court can judge for itself whether it thinks that the church knowingly and intentionally waived that argument.  That was before the district court, and summary judgment should not have been granted. Thank you. All right, thank you. Our thanks to both counsel. The case is taken under advisement.